REQUESTED BY: M. Berri Balka, State Tax Commissioner
You have requested our opinion on several questions pertaining to the use of keno lottery proceeds to provide "tax relief for the community" under the definition of "community betterment purposes" in Neb. Rev. Stat. § 9-604 (1)(d) (1991). The particular situation giving rise to your request involves a proposed use of keno lottery proceeds by the Village of Denton [the "Village"]. The Village, a community of approximately 180 people, is located in Lancaster County about twelve miles southwest of the City of Lincoln, Nebraska. It has been licensed for and has actively conducted a keno lottery under the Nebraska County and City Lottery Act [the "Act"] for several years. Under the Act, a county, city, or village is permitted to retain that portion of gross proceeds (total dollars wagered) remaining after payment of prizes to players, expenses, and taxes paid to the state. The portion of gross proceeds kept by a county, city, or village must "be used solely for community betterment purposes. . . ." Neb. Rev. Stat. § 9-629 (1) (Cum. Supp. 1994). The definition of "community betterment purposes" under the Act is defined, in part, to include "providing tax relief for the community." Neb. Rev. Stat. § 9-604 (1)(d) (1991).
You state that the Village is considering adopting a resolution which would use its keno proceeds to provide "property tax relief". Under the proposed plan, property taxes would be assessed and paid by the Village's property owners. Following their payment of the tax, the property owners would submit their tax receipts to the Village Clerk as a claim to the Village. The Village then proposes to pay the owners for their claim, which would, in effect, reimburse them for the amount of property taxes paid. As we understand the proposal, the amount of taxes subject to claim and reimbursement would include not only property taxes levied for the Village, but also property taxes levied against property owners in the Village for other taxing jurisdictions (i.e., Lancaster County, the local public school district, or other political subdivisions). You state the Village is relying on the aforementioned portion of § 9-604 (1) for authority to enact this plan.
You have asked our opinion on several question relating to the propriety of the Village's proposal. First, you ask whether the Village's property tax "reimbursement" plan is consistent with the Legislature's intent in defining "community betterment purposes" to include the provision of "tax relief for the community" under § 9-604 (1). Second, you ask whether, if this property tax "reimbursement" proposal falls within the definition of "community betterment purposes", the Village may extend the plan to reimburse not only property taxes levied for the Village, but also to reimburse property owners for taxes levied by other taxing jurisdictions. Third, you ask whether, if the Village may use lottery proceeds to provide property tax relief, it may do so by reimbursement, or whether it must do so by lowering its tax levy or by "some alternative method". Finally, you ask whether implementation of the plan, or any other method, would result in an impermissible "commutation" of taxes prohibited by Neb. Const. art. VIII, § 4, or Neb. Rev. Stat. § 77-1737 (1990).
For the reasons set forth below, we conclude that, while it is a close question, we cannot say the Village's "reimbursement" plan for property taxes paid by property owners of the Village is inconsistent with the definition of "community betterment purposes" allowing the use of lottery proceeds to provide "tax relief for the community." We also believe that the proposal does not contravene the recent Nebraska Supreme Court decision in Cityof Ralston v. Balka, 247 Neb. 773, ___ N.W.2d ___ (1995), interpreting the meaning of "community betterment purposes" for which lottery proceeds may be used under Neb. Const. art. III, § 24. In addition, we conclude that implementation of the plan would not be an impermissible "release", "discharge", or "commutation" of taxes. We also cannot say that the proposal, which would reimburse not only property taxes levied for the Village, the community conducting the keno lottery, but also property taxes levied by other taxing subdivisions and paid by members of the Village, would be viewed as falling outside the Legislature's intent in defining "community betterment purposes" to include "providing tax relief for the community."
I. Community Betterment Purposes.
The Nebraska Constitution prohibits all games of chance and lotteries except as otherwise provided by law. Neb. Const. art. III, § 24. Subsection 2 of art. III, § 24, provides exceptions to the general gambling ban. This subsection provides, in pertinent part, that "[t]he Legislature may authorize and regulate a state lottery . . . and other lotteries, raffles, and gift enterprises . . . the proceeds of which are to be used solely for charitable or community betterment purposes without profit to the promoter of such lotteries, raffles, or gift enterprises."
The Act, of course, permits counties, cities, or villages to conduct lotteries, including the keno lottery conducted by the Village. The Legislature, as part of the Act, has defined the term "community betterment purposes" as follows:
 Community betterment purposes shall mean (a) benefiting persons by enhancing their opportunity for educational advancement, by relieving or protecting them from disease, suffering, or distress, by contributing to their physical well-being, by assisting them in establishing themselves in life as worthy and useful citizens, by providing them with opportunities to contribute to the betterment of the community, or by increasing their comprehension of and devotion to the principles upon which this nation was founded, (b) initiating, performing, or fostering worthy public works or enabling or furthering the erection or maintenance of public structures, (c) lessening the burdens borne by government or voluntarily supporting, augmenting, or supplementing services which government would normally render to the people, or (d) providing tax relief for the community.
Neb. Rev. Stat. § 9-604 (1) (1991) (emphasis added).
Your first three questions require an interpretation of the Legislature's intent in establishing "providing tax relief for the community" as a "community betterment purpose" for which lottery proceeds may be used. To determine the type of "tax relief" contemplated by the Legislature, it is necessary to resort to established rules of statutory interpretation.
A fundamental principle of statutory construction is to attempt to ascertain legislative intent and to give effect to that intent. County of Lancaster v. Maser, 224 Neb. 566,400 N.W.2d 238 (1987). The reasons for the enactment of a statute, and the purposes and objects of the act, may be guides in attempting to give effect to the intent of lawmakers. State v.Jennings, 195 Neb. 434, 238 N.W.2d 477 (1976). A statute should be interpreted in such a manner as to give effect to the purpose and intent of the legislature as ascertained from the entire language of the statute in its plain and ordinary sense. NC+Hybrids v. Growers Seed Ass'n, 219 Neb. 296, 363 N.W.2d 362
(1985). A statute should be construed in the context of the mischief sought to be remedied and the purpose to be served. Inre Boundaries of McCook Public Power District, 217 Neb. 11,347 N.W.2d 554 (1984). In construing a legislative act, resort may be had to the history of its passage for the purpose of determining legislative intent. Georgetown Ltd. Partnership v. GeotechnicalServices, Inc., 230 Neb. 22, 430 N.W.2d 34 (1988).
"Relief" is defined, in part, as the "lightening of a burden, as of taxation, . . . ." Webster's New Universal Unabridged Dictionary 1526 (2d ed. 1983). The common understanding of tax "relief" thus would include the "lightening" of the burden of taxation. Obviously, the Village's plan would certainly be consistent with such an interpretation, as reimbursing Village members for property taxes paid would surely have the effect of "lightening" their tax burden. The Legislature employed broad and unrestricted language in providing that "community betterment purposes" includes "providing tax relief for the community". We do not believe it would be appropriate for us to place a limitation on such language which would construe the Village's proposal to fall outside the plain and ordinary meaning of the language employed by the Legislature.
We have examined the legislative history of 1991 Neb. Laws, LB 427, which first established the definition of "community betterment purposes" under § 9-604 (1), including the subsection establishing "tax relief for the community" as such a purpose. The history of the bill gives no indication of the Legislature's intent in adopting this language, and thus is not helpful in ascertaining legislative intent.
We have also reviewed the construction given this provision by the Department. Nebraska Department of Revenue Reg-35-601.021 provides that "community betterment purposes" includes "[p]roviding tax relief for the community, such as using fundsraised from county, city, or village lottery to fund any programsor needs which would normally be paid for by taxes imposed uponthe community." (emphasis added).
The interpretation of a statute given to it by an administrative agency to which the statute is directed is entitled to weight. Vulcraft, a Div. of Nucor Corp. v. Karnes,229 Neb. 676, 428 N.W.2d 505 (1988); ATS Mobile Tel., Inc. v.Curtin Call Communications, Inc., 194 Neb. 404, 232 N.W.2d 248
(1975). Although construction of a statute by the department charged with enforcing it is not controlling, considerable weight will be given to such construction, particularly when the Legislature has failed to take any action to change such interpretation. McCaul v. American Savings Co., 213 Neb. 841,331 N.W.2d 841 (1983).
The Department's regulation seems to contemplate that the provision of "tax relief for the community" under § 9-604
(1)(d) is to be accomplished by the use of lottery proceeds to fund activities supported by the local government conducting the lottery which, in turn, would lessen the need to rely on property or other taxes to fund such community needs. Arguably, the Village's plan, to the extent it differs from the manner of providing "tax relief" set forth in the Department's regulation, could be viewed as inconsistent with the interpretation given the statute by the Department. The Department's regulation, however, should be construed as giving only an example of a permissible manner of using lottery proceeds to provide tax relief; it does not appear to be intended to provide the exclusive means of doing so. Indeed, an agency cannot adopt rules or regulations which are inconsistent with statutes. State ex rel. Spire v. Stodola,228 Neb. 107, 421 N.W.2d 436 (1988); Beatrice Manor, Inc. v. Dept. ofHealth, 219 Neb. 141, 362 N.W.2d 45 (1985). Based on what we have said previously regarding the plain meaning of the broad language chosen by the Legislature in establishing "tax relief for the community" as a "community betterment purpose", we decline to construe the Department's regulation as being "all-inclusive" in establishing permissible uses of lottery proceeds to provide tax relief.
In addition, we note the Nebraska Supreme Court's recent decision in City of Ralston v. Balka, 247 Neb. 773, ___ N.W.2d ___ (1995), in analyzing whether the use of lottery proceeds by the Village in this manner would constitute a legitimate "community betterment purpose" under the Court's interpretation of Neb. Const. art. III, § 24. In City of Ralston, the Court held that 1991 Neb. Laws, LB 795 § 6, which required that two percent of the gross proceeds from certain lotteries be credited to a fund "to supplement live thoroughbred racing in Nebraska", violated Neb. Const. art. III, § 24, because such use was not for "charitable or community betterment purposes." Id. at 779, ___ N.W.2d at ___. Discussing the meaning of the term "community betterment" under art. III, § 24, the Court stated that a "betterment" is "`an improvement . . . that does more than restore to a former good condition'". Id.[1] Applying this definition, it held the act unconstitutional, stating:
 [S]upplementing the purses for live thoroughbred racing in Nebraska clearly does not confer any direct and peculiar benefit to the entire community. To the contrary, only owners of Nebraska-bred horses stand to benefit from the implementation of L.B. 795, § 6, and any argument that such a lottery regulation will eventually trickle down to the general populace and better the community at large is at best tenuous. Such a `betterment' clearly is not shared by the entire community. As a result, L.B. 795, § 6, does not qualify for the `community betterment' exception to article III, § 24.
Id.
The Village's plan is not inconsistent with the Nebraska Supreme Court's interpretation of "community betterment purposes" under art. III, § 24, as set forth in City of Ralston. The Village's plan certainly would confer a "direct and peculiar benefit" upon property owners in the community, and, unlike the use of lottery proceeds under the statute at issue in City ofRalston, would benefit the "general populace" in that it does not exclude any members of the community who are property taxpayers. Because the Court did not address the statutory definition of "community betterment purposes" in § 9-604 (1), this decision is not in any way dispositive of the question presented. It does, however, indicate that the Village's plan would not necessarily contravene the Court's understanding of the term "community betterment purposes" under art. III, § 24.
II. Release, Discharge, or Commutation of Taxes.
Neb. Const. art. VIII, § 4, provides, in part, that, except for certain delinquent real property taxes,
 the Legislature shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes levied for state purposes, or due any municipal corporation, not shall commutation for such taxes be authorized in any form whatever; . . . .
In State ex rel. Meyer v. Story, 173 Neb. 741. 751,114 N.W.2d 769, ___ (1962), the Nebraska Supreme Court stated that "[b]y Article VIII, section 4, of the Constitution of Nebraska, the Legislature, in plain and unequivocal language, is inhibited from enacting any law releasing or discharging any individual, corporation, or property from their or its proportionate share of taxes to be levied for state or municipal purposes."
In addition to the constitutional prohibition against the Legislature enacting any law which would have the effect of releasing, discharging, or commuting taxes, the Legislature has enacted Neb. Rev. Stat. § 77-1737 (1990), which provides, in pertinent part:
 No county or township board, city council, or village trustees shall have the power to release, discharge, remit, or commute any portion of the taxes assessed or levied against any person or property within their respective jurisdictions for any reason whatever. . . . The provisions of this section shall not be construed to prevent the proper authority from refunding taxes paid, as provided in section 77-1735, nor to interfere with the powers of any officers or board sitting as a board for the equalization of taxes.
While we believe it is a close question, we cannot conclude that the Village's proposal would have the effect of releasing or discharging property owners of their property tax obligations, either for taxes levied by the Village or property taxes levied for other governmental subdivisions. The prohibition in art. VIII, § 4, bars the Legislature from enacting any law having the effect of releasing, discharging, or commuting taxes. The Village's plan does not release or discharge a taxpayer from paying their property tax obligation; rather, it would operate only to reimburse taxpayers after they have satisfied their property tax obligation. While it could be argued this is an improper attempt to do indirectly that which the Constitution forbids directly, we cannot conclude that interpreting §9-604 (1)(d) to authorize the Village's implementation of its proposal to provide "tax relief for the community", would render the statute violative of art. VIII, § 4.
In addition, we do not believe the Village's proposal would run afoul of the prohibition in § 77-1737 against the release, discharge, remission, or commutation of taxes assessed or levied against any person or property by various local officials. As noted previously, the Village's plan does not necessarily run afoul of these principles, as it reimburses only taxes paid, rather than releasing, discharging, remitting, or commuting tax obligations prior to payment. Also, it is an established rule of statutory construction that specific statutory provisions relating to a particular subject control over general provisions. In re Interest of Murray, 235 Neb. 430,455 N.W.2d 185 (1990). In School Dist. of Minatare v. County ofScotts Bluff, 189 Neb. 395, 202 N.W.2d 825 (1972), the Court held that the prohibition in § 77-1737 against any county board releasing, discharging, remitting, or commuting taxes, did not prevent the refund of taxes authorized under a specific refund statute. Similarly, § 9-604 (1)(d) can be construed as a specific statute authorizing the use of lottery proceeds to provide "tax relief", including the type of relief contemplated under the Village's proposal. As such, the specific authority in § 9-604 (1)(d) to use lottery proceeds in this manner controls over the general prohibition against the release, discharge, remission, or commutation of taxes in § 77-1737.
III. Conclusion.
In sum, we conclude that, while it is a close question, the Village's plan to use lottery proceeds to "reimburse" property taxes paid by property owners of the Village likely is permissible under the definition of "community betterment purposes" to include the provision of "tax relief for the community" under § 9-604 (1)(d). The proposal also appears to be consistent with the Nebraska Supreme Court's recent decision in City of Ralston v. Balka, 247 Neb. 773, ___ N.W.2d ___ (1995), interpreting the meaning of "community betterment purposes" for which lottery proceeds may be used under art. III, § 24. Furthermore, implementation of such a plan would not constitute an impermissible "release", "discharge", "remission", or "commutation" of taxes under art. VIII, § 4, and § 77-1737. Nor do we believe that the plan is impermissible because it would reimburse not only property taxes levied for the Village, the community conducting the keno lottery, but also property taxes levied for other taxing subdivisions, as the language of § 9-604 (1)(d) providing for use of lottery proceeds to give "tax relief for the community" is broad enough to pertain to relieving or lightening the burden of taxation born by members of the community, regardless of the source of the burden.
Very truly yours,
 DON STENBERG Attorney General
 L. Steven Grasz Deputy Attorney General
APPROVED BY:
Don Stenberg 
Attorney General
[1] The Court did not discuss or address the legislative definition of "community betterment purposes" in § 9-604 (1).