Sanitary and Improvement District No. 424 of
Douglas County, Nebraska, appellee, v. Tristar
Management, LLC, a Nebraska limited
liability company, appellant.

___ N.W.2d ___

Filed June 27, 2014.    No. S-13-582.

1. **Equity: Quiet Title.** A quiet title action sounds in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.
3. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
4. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law that an appellate court independently reviews.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Reversed and remanded with directions.

Christian R. Blunk, of Harris Kuhn Law Firm, L.L.P., for appellant.

Mark J. LaPuzza, of Pansing, Hogan, Ernst & Bachman, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.
### NATURE OF CASE
Tristar Management, LLC (Tristar), appeals the order of the district court for Douglas County in which it ruled that the special assessment liens levied by Sanitary and Improvement District No. 424 of Douglas County, Nebraska (the SID), against five parcels of real estate located within the SID survived Tristar's acquisition of title to the parcels by the issuance to Tristar of treasurer tax deeds under Neb. Rev. Stat.

§ 77-1837 (Reissue 2009). Because we conclude that the liens were foreclosed by the issuance of the tax deeds, the district court erred as a matter of law. We reverse the order entering summary judgment in favor of the SID and denying Tristar's motion for summary judgment, and we remand the cause with directions.

## STATEMENT OF FACTS

This case involves five parcels of real estate that are located within the boundaries of the SID: lots 46, 53, 54, 94, and 176 (the Properties). The Properties are located in Stone Park, which is a subdivision in Douglas County. The parties stipulated to the underlying facts as follows:

1. That the special assessments on [the Properties] were levied on December 3, 1999 by the [SID] via special assessment in the amount of $8,496.57 per Lot. Interest as of 2.28.13 totals $12,576.15 for a total per Lot of $21,072.72.

2. That the [Properties] had been in a 2005 tax sale auction and were subsequently sold under Neb. Rev. Stat. § 77-190[1] et [seq]. [(Reissue 2009)] collection of delinquent real property taxes through district court proceedings to HBI, LLC pursuant to Douglas County District Court case CI 1082, Page 845 entitled Adair Asset Mgmt v. East. . . .

3. HBI, LLC brought Douglas County District Court matter CI 1099-167, HBI, LLC v. Sanitary Improvement District 424, against [the] SID . . . seeking declaratory action. [The] SID . . . answered and cross claimed the sale was improper and that [the] SID . . . was not properly served. . . .

4. Douglas County District Court matter CI 1099-167 was dismissed with prejudice. . . .

5. A Special Warranty Deed #2011030257 was filed [by HBI, LLC] with the Douglas County Register of Deeds office on April 5, 2011, [whereby the SID became titleholder,] along with the accompanying Real Estate Transfer Statement Form 521, designating the address of MARK LaPUZZA, Pansing Hogan Ernst & Bachman,

10250 Regency Circle, Suite 300, Omaha, NE 68114 as the place to send tax statements. . . .

6. [At some point] TRISTAR . . . became the assignee of the [2009] Tax Certificates attached to the following [Properties:]

| 2009-2311 | Lot 46 |
|-----------|--------|
| 2009-2356 | Lot 94 |
| 2009-2873 | Lot 176 |
| 2009-3348 | Lot 53 |
| 2009-3376 | Lot 54 |

7. TRISTAR commenced in March, 2012 under Neb. Rev. Stat. § 77-180[1] et [seq]. [(Reissue 2009)] the collection of property tax by sale of real property and caused the attached Notices to be delivered by certified mail, receipt requested to the SID's address of record. See attached Exhibit "6" for each Lot['s] respective Notice and green card c/o MARK LaPUZZA, 10250 Regency Circle, Suite 300, Omaha, NE 68114 which all green cards were signed for and returned.

8. TRISTAR further published the Notice on each respective Lot. . . .

9. On various dates, TRISTAR applied for Tax Deeds on each of the respective properties. . . .

10. On various dates, the Deeds were granted and subsequently recorded. . . .

11. The SID . . . took no action to redeem the Certificates within each respective certificate's 90-day redemption period.

12. [The SID's] chairman is Lori Bachman, 6228 North 153rd Avenue, Omaha, NE 68116. [The SID's] clerk is Tom Umthun, 6214 North 154th Street, Omaha, NE 68116.

13. The record of address of the SID for the Lots certified by the Douglas County Assessor for the period of January 1, 2012 to June 30, 2012 is c/o Mark LaPuzza, 10250 Regency Cir., Suite 300, Omaha, NE. . . .

As reflected in the stipulated facts, the SID became the titleholder of the Properties in 2011 and, through assignment, Tristar became the holder of five 2009 tax certificates

on the Properties. In March 2012, Tristar began proceedings to redeem the tax certificates under statutes in chapter 77, article 18, of the Nebraska Revised Statutes relating to the "Collection of Delinquent Real Property Taxes by Sale of Real Property." Tristar published notices regarding its intent to redeem the tax certificates and mailed notices to the address of the SID's attorney, Mark LaPuzza, who had been designated as the place to send tax statements to be paid by the SID on the Properties. Tristar then applied for and obtained from the Douglas County treasurer the tax deeds to the Properties pursuant to § 77-1837.

As will be explained more fully below in our analysis, there are two processes through which a holder of tax certificates can exercise his or her rights to the property purchased at a tax sale. Under chapter 77, article 18, the holder of a tax certificate can obtain a tax deed from the county treasurer, after having given proper notice; we refer to this as the "tax deed" method. Under chapter 77, article 19, the holder of a tax certificate can foreclose upon the tax lien in a court proceeding and compel sale of the property, yielding a sheriff's deed, under Neb. Rev. Stat. § 77-1902 (Cum. Supp. 2012); we refer to this as the "judicial foreclosure" method. See, generally, *Knosp v. Shafer Properties*, 19 Neb. App. 809, 820 N.W.2d 68 (2012).

In this case, after Tristar had obtained tax deeds for the Properties under the "tax deed" method under chapter 77, article 18, the SID filed its complaint against Tristar in the district court for Douglas County on August 21, 2012. This case gives rise to the instant appeal. The SID asserted two causes of action. "Count I" was an action to quiet title in the Properties in the SID. The SID alleged that the tax deeds held by Tristar were void due to lack of proper notice to the SID. The SID also sought orders declaring that its special assessments levied in 1999 continued to be valid liens on the Properties and that Douglas County's public tax records should reflect such special assessment liens. "Count II" was an action for foreclosure of the liens for the special assessments.

On October 11, 2012, Tristar filed a motion to dismiss count II for failure to state a claim. On January 11, 2013, the

district court sustained Tristar's motion to dismiss count II of the complaint.

On February 12, 2013, Tristar filed a motion for summary judgment, and a hearing was held on the motion on March 1. The bill of exceptions from the hearing includes a set of "Stipulated Facts" and eight exhibits. At the hearing, the district court granted Tristar's motion for leave to file its answer out of time. In its answer with regard to count I, Tristar affirmatively averred that the SID had been properly notified and served under the relevant statute in chapter 77, article 18, including Neb. Rev. Stat. § 77-1832 (Reissue 2009). Tristar also affirmatively averred that "TRISTAR tax deeds are valid and have cleared the title[s] from all liens, interests, and encumbrances of record." (Emphasis in original.) Tristar requested an order stating that the special assessments were no longer valid liens on the Properties. After the hearing on Tristar's motion for summary judgment, the SID filed its cross-motion for summary judgment, stating that its motion could be considered in connection with the evidence adduced at the hearing on Tristar's motion for summary judgment.

The district court filed its order on June 13, 2013, ruling on the parties' cross-motions for summary judgment. It is this order from which Tristar appeals. In its order, the district court stated that "[a]t issue is whether or not a tax deed issued by a county treasurer excludes any lien on real estate for special assessments levied by a sanitary improvement district."

In making its determinations in its June 13, 2013, order, the district court relied upon § 77-1902 from the judicial foreclosure statutes. Section 77-1902 provides:

> When land has been sold for delinquent taxes and a tax sale certificate or tax deed has been issued, the holder of such tax sale certificate or tax deed may, instead of demanding a deed or, if a deed has been issued, by surrendering the same in court, proceed in the district court of the county in which the land is situated to foreclose the lien for taxes represented by the tax sale certificate or tax deed and all subsequent tax liens thereon, excluding any lien on real estate for special assessments levied by any sanitary and improvement district which special

> assessments have not been previously offered for sale by the county treasurer, in the same manner and with like effect as in the foreclosure of a real estate mortgage, except as otherwise specifically provided by sections 77-1903 to 77-1917. Such action shall only be brought within six months after the expiration of three years from the date of sale of any real estate for taxes or special assessments.

Based on § 77-1902, the district court concluded that the tax deeds issued to Tristar by the Douglas County treasurer did not foreclose or extinguish the special assessment liens held by the SID. The district court reasoned that "[f]oreclosing special assessments upon the issuance of a treasurer's deed would nullify the priority given to special assessments as set forth in Neb. Rev. Stat. 77-1902." Because of this determination, the district court stated that the issue regarding whether Tristar gave proper notice to the SID when Tristar was in the process of obtaining its tax deeds was moot and need not be decided.

Given the foregoing determinations, the district court denied Tristar's motion for summary judgment and granted the SID's motion for summary judgment. The district court ordered that the Properties

> are not subject to foreclosure or termination pursuant to the treasurer[']s deed[s] received by Tristar . . . from the Douglas County Treasurer and that the special assessments levied by [the SID] on December 3, 1999 continue to be a valid lien against each of the [Properties] until paid and that Douglas County should amend its public tax records to reflect such special assessments against the [Properties].

Tristar appeals.

## ASSIGNMENTS OF ERROR

Tristar claims on appeal, restated, that the district court erred when it (1) granted the SID's motion for summary judgment and denied Tristar's motion for summary judgment, (2) found that the tax deeds issued to Tristar did not foreclose or terminate the SID's special assessment liens and that the

special assessment liens continued to be valid liens against the Properties, (3) applied § 77-1902 to a proceeding for a tax deed, (4) failed to address the issue of the sufficiency of the notice provided by Tristar to the SID in obtaining its tax deeds and found such issue moot, (5) failed to find that Tristar's notice to the SID was sufficient, (6) impliedly found that the SID had standing to bring count II for foreclosure of the special assessment liens, and (7) failed to address Tristar's argument that because the SID filed the special warranty deeds to the Properties in 2011, the doctrine of merger should be applied to conclude that the SID's special assessment liens merged with the SID's interest as a titleholder.

## STANDARDS OF REVIEW

[1,2] A quiet title action sounds in equity. *Obermiller v. Baasch*, 284 Neb. 542, 823 N.W.2d 162 (2012). On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination. *Id*.

[3] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014).

[4] Statutory interpretation presents a question of law that an appellate court independently reviews. *SourceGas Distrib. v. City of Hastings*, 287 Neb. 595, 844 N.W.2d 256 (2014).

## ANALYSIS

The central issue in this appeal is the correctness of the district court's order in which it concluded that the SID's special assessment liens survived issuance of the tax deeds to Tristar. The court reached this conclusion by applying § 77-1902, which effectively provides for the survival of sanitary improvement district special assessment liens in judicial foreclosure proceedings under Neb. Rev. Stat. § 77-1901

et seq. (Reissue 2009 & Cum. Supp. 2012), to the tax deed process Tristar had pursued under the treasurer's tax deed statutes found at Neb. Rev. Stat. § 77-1801 et seq. (Reissue 2009 & Cum. Supp. 2012). As explained below, we conclude that the district court erred as a matter of law when it applied the chapter 77, article 19, provision to the transfer of property under chapter 77, article 18, and we reverse, and remand with directions. Given the disposition of this appeal, we find it unnecessary to reach certain assignments of error and we combine and comment only briefly on other issues raised in this appeal.

*Merger.*

We turn first to Tristar's contention that because the lesser interests, i.e., special assessment liens, merged into the greater interests, i.e., titles, held by the same entity, after the SID gained title, the SID had no lienhold interests to protect. See, generally, *Franksen v. Crossroads Joint Venture*, 245 Neb. 863, 515 N.W.2d 794 (1994). Tristar contends that due to merger, the SID lacked standing to bring count II, in which it sought to foreclose on its liens, and that the district court erred when it denied the portions of Tristar's motions seeking to dispose of count II.

The procedural posture of this case is complex and does not warrant repeating. In sum, the record shows that the district court dismissed the SID's count II earlier in the pendency of the case and did not properly reinstate it. Count II stands dismissed. Thus, to the extent the order on appeal purports to rule on count II, such rulings are a nullity and are vacated. Further, with respect to merger, for purposes of our consideration of the central issue in the case, our analysis will assume that the SID's special assessment liens did not merge into the SID's title, and therefore, we proceed to consider the survival of the SID's special assessment liens following the issuance of the tax deeds to Tristar.

*Notice.*

We turn next to Tristar's claim that the district court erred when it failed to rule on the SID's contention that notice

to the SID of the pending issuance of tax deeds to Tristar was not sufficient. Tristar maintains that application of the law to the stipulated facts shows that notice was sufficient. We agree.

The SID relied on Neb. Rev. Stat. § 25-510.02(3) (Cum. Supp. 2012) in support of its argument. Given its disposition on the merits favorable to the SID, the district court ruled that the "issue of the sufficiency of notice provided to SID 424 is moot" and did not address the issue. The SID did not cross-appeal the district court's treatment of notice.

A county treasurer's tax deed is presumptive evidence that procedures required by law to make a good and valid tax sale and vest title in the purchaser were done. See, § 77-1842; *Ottaco Acceptance, Inc. v. Huntzinger*, 268 Neb. 258, 682 N.W.2d 232 (2004). As to proper notice under the tax deed method, § 77-1832 provides in part:

> (1) Service of the notice provided by subsection (1) of section 77-1831 shall be made by:
>
> (a) Personal or residence service as described in section 25-505.01 upon every person in actual possession or occupancy of the real property and upon the person in whose name the title to the real property appears of record who can be found in this state; or
>
> (b) Certified mail, return receipt requested, upon the person in whose name the title to the real property appears of record who cannot be found in this state or who cannot be served by personal or residence service to the address where the property tax statement was mailed and upon every encumbrancer of record in the office of the register of deeds of the county. Whenever the record of a lien shows the post office address of the lienholder, notice shall be sent by certified mail, return receipt requested, to the holder of such lien at the address appearing of record.

The parties stipulated to the following facts, which we repeat because, taken together, they show sufficient notice: A "Special Warranty Deed" was filed with the Douglas County register of deeds at instrument No. 2011030257, on April 5, 2011, whereby the SID became the titleholder of the Properties. Also

filed with such "Special Warranty Deed" was a "Real Estate Transfer Statement Form 521." Item No. 19 of "Form 521" designated LaPuzza and his office address as the address of record to which the tax statements should be sent.

Tristar, through assignment, was the holder of the five 2009 tax certificates (Nos. 2009-2311, 2009-2356, 2009-2873, 2009-3348, and 2009-3376) when the SID did not pay the general real property taxes on the Properties. During March 2012, Tristar caused the redemption notices authorized by § 77-1831 to be delivered by certified mail, receipt requested, to the address of record where the property tax statements were mailed pursuant to § 77-1832. As noted in the stipulated facts, this address was designated by the SID under "Form 521" filed with the "Special Warranty Deed" as "c/o MARK LaPUZZA, 10250 Regency Circle, Suite 300, Omaha, NE 68114." Tristar also published the notices, pursuant to § 77-1834.

On various dates in July to August of 2012, Tristar applied for the tax deeds to the Properties, pursuant to § 77-1831 et seq. At the time Tristar applied for the tax deeds, affidavits of service of notice were provided to the Douglas County treasurer pursuant to § 77-1833, as was proof of publication pursuant to § 77-1835. The Douglas County treasurer, pursuant to § 77-1837, issued the respective tax deeds. The SID took no action to redeem the tax certificates within the 90-day redemption period or at any time prior to the redemption period. According to the stipulated facts, the Douglas County assessor's office certified that the address of record for the SID for tax purposes on the Properties was "c/o Mark LaPuzza, 10250 Regency Cir[cle], Suite 300, Omaha, NE."

Despite the foregoing undisputed facts, the SID relied on Neb. Rev. Stat. § 25-501 et seq. (Reissue 2008 & Cum. Supp. 2012) to support its claim of inadequate notice. The SID specifically contends that, as a political subdivision, service should have been made on a board member or officer. See § 25-510.02(3). The statutes upon which the SID relies are general service statutes and do not control. Instead, the specific statutes, § 77-1831 and following, control proper notice relative to the issuance of tax deeds and provide, inter alia,

that notice be given to the address of record provided by the SID to the county for delivery of its tax statement. Because notice was given to the address so designated, we determine that notice was sufficient, and the district court should have so determined.

*Misapplication of § 77-1902.*

The district court relied on § 77-1902 when it concluded that the SID's special assessment liens survived the issuance of the tax deeds to Tristar. It was on this basis that the district court denied Tristar's motion for summary judgment and granted the SID's motion for summary judgment. In its order, the district court stated that the SID's assessment liens "continue to be a valid lien against each of the [Properties] until paid and that Douglas County should amend its public tax records to reflect such special assessments against the [Properties]."

Tristar claims that the district court erred when it invoked § 77-1902—found in chapter 77, article 19, pertaining to judicial foreclosures—and applied it to the tax deed process found in chapter 77, article 18, pursued by Tristar. We agree that the district court erred.

Statutory interpretation presents a question of law that an appellate court independently reviews. *SourceGas Distrib. v. City of Hastings*, 287 Neb. 595, 844 N.W.2d 256 (2014). Because the district court erred in its reading and application of a statute, it erred as a matter of law, and because the material facts are not in dispute, we reverse the district court's order granting summary judgment in favor of the SID and remand the cause with directions to enter summary judgment in favor of Tristar and other directions.

As a general matter, when a county treasurer sells real property for delinquent taxes, the purchaser receives a "tax certificate," but the owner of the property can redeem the property by paying the delinquent taxes plus interest. See *Knosp v. Shafer Properties*, 19 Neb. App. 809, 820 N.W.2d 68 (2012). In several of our cases, we have described the "two courses of action by which the purchaser of a tax certificate may proceed—the purchaser can either wait and obtain a [tax] deed

of conveyance [from the treasurer] for the property or obtain an order of foreclosure [from a court] and compel the sale of the property." *INA Group v. Young*, 271 Neb. 956, 960, 716 N.W.2d 733, 737 (2006). See, also, *Ottaco Acceptance, Inc. v. Larkin*, 273 Neb. 765, 733 N.W.2d 539 (2007). The former method is sometimes referred to as the "tax deed" procedure and is authorized by § 77-1837, and the latter is sometimes referred to as a "judicial foreclosure" and is governed by § 77-1901 et seq. The cases of *INA Group, supra*; *Ottaco Acceptance, Inc., supra*; and *Knosp, supra*, explain the two methods in greater detail.

Although the two methods bear similarities, they are neither comparable nor fungible. For example, notice procedures concerning the tax deed process are well defined in § 77-1831 and subsequent statutes, so as to give interested parties notice of the holder's intent to apply for the tax deed and provide such parties an opportunity to take action to protect their interests. In the face of inaction, the treasurer issues the tax deeds. In contrast, notice procedures concerning judicial foreclosure, in § 77-1901 et seq., are designed to bring interested parties into the judicial foreclosure proceeding so that they may be heard together and competing interests reconciled.

Although the overall objective of both procedures is the recovery of unpaid taxes on real property, these "are two separate and distinct methods for the handling of delinquent real estate taxes." *Brown v. Glebe*, 213 Neb. 318, 320, 328 N.W.2d 786, 788 (1983). We have observed that the two "methods are neither the same nor duplicative of each other, and the provisions of Chapter 77, article 18, are not interchangeable with the provisions of Chapter 77, article 19." 213 Neb. at 321, 328 N.W.2d at 788. This principle applies to the instant case.

The Nebraska Court of Appeals has recently considered the issue of whether a lien on a piece of real property was foreclosed by the issuance of a treasurer's tax deed under § 77-1837. See *Knosp, supra*. After reviewing the arguments of the parties, the relevant statutes, and our jurisprudence, the Court of Appeals held that "a treasurer's tax deed, issued pursuant to § 77-1837 and in compliance with Neb. Rev. Stat. §§ 77-1801 to 77-1863 (Reissue 2009), passes title free and

clear of all previous liens and encumbrances." *Knosp*, 19 Neb. App. at 810, 820 N.W.2d at 70. This holding is supported by earlier case law cited in *Knosp*. See, e.g., *Sanford v. Scott*, 105 Neb. 479, 484, 181 N.W. 148, 150 (1920) (concluding that county treasurer's tax deed "conveyed the title to the defendant . . . free from the lien of plaintiff's mortgage"). Although the lienholder in *Knosp* was a private entity, the holding in *Knosp* applies to the SID, because the SID, albeit public, is not a general taxing authority and does not enjoy general priority. Compare, e.g., Neb. Rev. Stat. § 77-203 (Reissue 2009) ("taxes on real property shall be a first lien"); Neb. Rev. Stat. § 14-557 (Reissue 2012) ("general municipal taxes upon real estate [levied by cities of the metropolitan class] shall be a first lien").

We have long held that title passes free and clear of all previous liens and encumbrances pursuant to the judicial foreclosure method found in chapter 77, article 19. E.g., *Polenz v. City of Ravenna*, 145 Neb. 845, 18 N.W.2d 510 (1945). And under *Knosp* and earlier cases cited therein, the same is true when the tax deed method found in chapter 77, article 18, is utilized. This being so, the portion of § 77-1902 added in 1996 upon which the district court relied, which effectively excludes special assessments levied by sanitary improvement districts from the free and clear effects of judicial foreclosure, is an exception to the common law. See 1996 Neb. Laws, L.B. 1321. Accordingly, we read it narrowly, and limit its application to the judicial foreclosure statutory method in which it was placed by the Legislature. See *ML Manager v. Jensen*, 287 Neb. 171, 175, 842 N.W.2d 566, 571 (2014) (stating that "if a statute is in derogation of common law, it is to be strictly construed"). As we observed in *Brown*, discussing chapter 77, articles 18 and 19, "[t]here is no authority in this court to transfer a portion of one statute to another." 213 Neb. at 321, 328 N.W.2d at 788. The terms of § 77-1902 are limited by law and logic to application in the judicial foreclosure method.

For completeness, we note that, expanding on the theme in § 77-1902, the Legislature amended § 77-1914 effective August 27, 2011, to provide that the sheriff's deed which results from the judicial foreclosure proceeding passes title to

the purchaser free and clear of all liens and interests of all persons who were parties to the proceedings, "excluding any lien on real estate for special assessments levied by any sanitary and improvement district." As with § 77-1902, this provision is inapplicable to tax deeds, and furthermore, it is a substantive change which was not in effect in 2009 when the tax certificates were issued. See § 77-1837.01.

In this case, the SID had numerous opportunities to protect its interests. Tristar lists these opportunities as including: by paying real estate taxes when they came due, by redeeming the property within the 3-year redemption period after issuance of the tax certificates, or by foreclosing its special assessment liens under § 77-1917.01, which provides in part:

> When such special assessments have become delinquent, without the real property against which they are assessed being first offered at tax sale by the tax sale certificate method or otherwise, the municipal corporation or district involved may itself as party plaintiff proceed in the district court of the county in which the real estate is situated to foreclose, in its own name, the lien for such delinquent special assessments in the same manner and with like effect as in the foreclosure of a real estate mortgage, except as otherwise specifically provided by sections 77-1903 to 77-1917, which shall govern when applicable.

See, also, § 77-1858 (providing for sale as requested by sanitary and improvement district). However, the SID did not pursue these avenues.

Tristar elected to exercise its rights to the Properties pursuant to the tax deed method. Tristar recorded its tax deeds, and thereafter, the SID filed this action. Summary judgment was granted in favor of the SID on the surviving quiet title claim. In a quiet title action, the SID was required to prove that it was the owner of the legal or equitable title to the Properties or had some interest therein superior to the rights of Tristar. *Knosp v. Shafer Properties*, 19 Neb. App. 809, 820 N.W.2d 68 (2012). See, also, *Weesner v. Weesner*, 168 Neb. 346, 95 N.W.2d 682 (1959). Based on our analysis above, title passed

to Tristar free and clear of all previous liens and encumbrances as a matter of law and the SID's special assessment liens did not survive the transfer to Tristar. The SID did not meet its burden of showing it had an enforceable interest that entitled it to judgment, and the district court erred when it granted summary judgment in favor of the SID, entered orders accordingly, and denied Tristar's motion for summary judgment.

## CONCLUSION

The treasurer tax deeds issued to Tristar pursuant to § 77-1837 and in compliance with § 77-1801 et seq. passed title to Tristar free and clear of all previous liens and encumbrances, including the special assessment liens of the SID. The district court erred when it applied § 77-1902 from the judicial foreclosure statutes to this case involving the treasurer tax deed method and reached a contrary conclusion. We reverse the order of the district court granting summary judgment to the SID and denying Tristar's motion for summary judgment, and remand the cause with directions to enter judgment in favor of Tristar on the SID's complaint.

REVERSED AND REMANDED WITH DIRECTIONS.

---

STATE OF NEBRASKA, APPELLEE, V.
THOMAS P. MERCHANT, APPELLANT.
___ N.W.2d ___

Filed June 27, 2014.    No. S-13-903.

1. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.
3. **Criminal Law: Directed Verdict.** In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained.